Our next case for argument today is 23-1712 XMT versus Intel. Mr. Rowles, please proceed. Thank you. Good morning, Your Honors. Anthony Rowles for XMTT. May it please the Court. There are two independent claim construction errors that justify reversal here. First, the District Court eliminated the phrase primarily in serial from the claim. It gave it no consideration either in the claim construction or when it assessed the evidence of infringement on summary judgment. Second, the construction of serial processor as one that, quote, executes instructions one at a time, I think is undisputed at this point, would exclude virtually all the processors that were known at the time of the invention and decades prior for this purpose, which would be contrary to the intrinsic evidence, including the very purpose of the invention, as well as contrary to how Intel itself describes these categories of processors, serial and parallel processors, outside of this litigation. And each of these errors of claim construction are what we have an issue with and led directly to the District Court, in our view, incorrectly judging non-infringement. Can I just ask, how do you think the District Court eliminated the word primarily? I took the District Court to be saying, I'm only interpreting the two-word phrase serial processor. That doesn't have primarily in it, but of course I'm not eliminating it from the rest of the claim language. So how is, you know, which would have to be met? And that point, the rest of the claim language, when the District Court did the summary judgment of non-infringement, doesn't matter because there's non-infringement just in the two-word phrase. So I don't get the elimination point. Two responses to that, Your Honor. So first, leading up to summary judgment, there was actually a claim construction. There seemed to be like five different occasions where claim construction came up and parties kept saying, you don't need it, okay, we argued something before, we're not arguing it anymore. So it's just, I mean, a giant mess by the time it came to summary judgment. Understood, Your Honor. The just months prior to summary judgment at Appendix 14-696 was the most recent summary judgment, or claim construction decision, where the court agreed with XMTT that when the claim refers to a serial processor, it says, XMTT notes that one of the claims states that a serial processor, quote, serial processor, is a, quote, processor adapted to execute software instructions in a software program primarily in serial. And Intel itself, when proposing constructions of, quote, serial processor, included the whole phrase, including the modifier, primarily in serial. So I think there was an understanding that the language primarily in serial in the claim is an internal definition of what a serial processor needs to do in this product. The second response is, even if we assume that primarily in serial is still in the claim, it's just not part of this two-word limitation. If we look at the district court's summary judgment analysis at Appendix 16 and 17, when it gets to the literal judgment assessment, it does not consider XMTT's argument that the modifier primarily in serial means that the serial processor may perform some degree of parallel processing. The way that the district court treats the claim, as it construed it, is that if there is a... So I guess, I mean, I'm genuinely confused about a number of things here. So when I read this specification, what I came away with was the following sense. The system has to do something primarily. Serial or parallel, put aside for one minute, not a small deal of how it can be both. But that what's happening in that first phrase is that you have a serial processor, which only does things serially, but when you get, when you have a program and you've got 27 instructions and you get to instruction number 17, that one, it's useful to perform by parallel processing. So you transition to do that instruction number 17 with parallel processors, and then maybe you come back and do the rest serially. It's not that the serial processor is ever, I don't think the specification ever says, the serial processor is ever used for parallel processing. It's just that the system as a whole does. Tell me what's wrong with that. I think if we begin from the claim of the 388 patent, to use the example, the two concepts you've mentioned, I think, are claimed separately. So there's claim limitations related to transitioning in the system between a serial mode and a parallel mode, and that involves handing off part of a program from the serial processor. I think what I'm thinking of is that it's handing off particular instructions, not whole programs. Well, I think at... So I'm thinking particularly, I guess, of column 5, lines 46 to 52. Sure. Yes, Your Honor. So at column 5, starting at line 46, when it's discussing the switch from a serial mode to a parallel mode, I think it's describing when a parallel processing mode is desired, the plurality of parallel processors take over processing the software instructions in the software program. That's what I was trying to summarize in saying you have a 27 instruction program, you do the serial processor does 1 through 16, that's 17, it's useful to switch over to the parallel, but that doesn't contemplate that the serial processor is ever doing anything but serial. I think this particular phrase is talking about the transition, which I agree can be part of the program. I don't know that the specification is saying it must be instructions 10 through 15. In other words, there may be an instruction where the serial processor then commands the parallel processor to do some function. Yes. There's a lot in the specification about setting things up so that the parallel processor has all the information it needs to do this bit. Understood. But then when we get to the claim language, that transition process is claimed in a separate limitation. And then when the inventor described the two components, the serial processor and the parallel processor, he did so by specifying that the serial processor is adapted to execute instructions primarily in serial, not that the system is configured. Do you disagree with what I think I'm remembering was the PTAB's interpretation that that language and its counterpart in the 388, I guess this was in the 388, refers to what the system is doing primarily, not what the individual processor is doing primarily? Yes, Your Honor. I disagree with that. But I think in view of the claim language, there are two components, I think, of the PTAB's construction. The PTAB did acknowledge that the serial processor when executing is doing so primarily in serial. The phrase was primarily in serial on the serial processor. And so we don't disagree with the primarily in serial part of that. But I think in terms of if there's a suggestion that all this language is talking about is a mode switch, I think that's inconsistent with the claim language itself. And it would leave that adapted to execute software instructions primarily in serial without any real meaning because the claim separately describes this transition from a serial processing mode to a parallel Could you address the adapted to language in the claim? It seems to me there's a suggestion that the serial processor itself doesn't inherently operate primarily in serial but must be adapted to operate in primarily serial. So the adapted to language is only in one of the two patents. It's only in the 388 patent. I think the way the parties have dealt with it thus far is that it means something like configured to. It's describing the configuration of that processor. I think that's consistent with our view that this is how that particular processor executes instructions, which is different from how parallel processors execute instructions, the separate claim language. I don't think it's a real-time You don't think it means altered to? Not in, if Your Honor is saying, in sort of real-time during the execution of a program. No, I think this is how the Because the two claim ones you treat as standing or falling together. Correct. One has adapted to and one doesn't. That's correct. I don't think either party suggests that there's a distinction because of the inclusion of adapted in one and the other. The district court's construction of serial processor is what I think would be the plain meaning of serial processor if people understood what a serial processor was. But your argument, if I understand it right, is that basically through lexicography, you've taken a standard serial processor and modified it so it doesn't operate exactly like a standard serial processor would be understood to operate. And you did so expressly through the claim language. Is that your argument? I think it's slightly different than that, Your Honor. I think the intrinsic evidence indicates that at the time of the invention, the type of processor used for serial processing, like a CPU, had these characteristics. For example, it would execute a pipeline of instructions where several of them are in progress at a time, but they finish one at a time. And that was within the understood meaning of serial processor. And so that's what's reflected in the introduction of the patent where it describes the context of the invention. It's also acknowledged in the cited prior Dr. Vishkin patents, which Intel points to, like the 336 patent, which is at appendix 6, 335, at column 1 starting at line 20. This is a 2002 patent application that says the processing architecture employed by today's personal computers is based on this Von Neumann architecture developed in the late 1940s. It goes on to say originally 1940s, there was a presumption of this sort of one at a time, nothing else is happening in between. Since then, that architecture understood by those in the art to include things like a pipeline of instructions where they're still moving on an assembly line kind of conveyor belt, but they are finishing one by one in serial. And so I think a person of skill reading the intrinsic evidence would understand that was within the scope of what was understood to be the serial type of processor at the time of the invention and before. And then the claim language using a term of degree, like primarily, only reinforces that. That it's not intended to be limited to the 1940s conception of a processor acting one instruction at a time, not starting anything until the first is finished. Can you say just a word about your, this other claim construction issue about executing and how it either does or does not relate to retirement of an instruction? Absolutely. So I think this is, the definition of execute, I think, and we mentioned this at the summary judgment hearing and in our expert report, is using this definition of execute that was proposed by Intel's experts. So this is, if you look at appendix 10356, this is paragraph 76 of the expert report referring to Dr. Amat, which is Intel's expert, who says that executing an instruction means computation of an instruction's result is produced from its input. So what we did in infringement analysis was look at where in the Intel processor is the result of a program instruction produced. And it turns out in Intel's architecture it's at the stage called retirement. That may not be the case for every processor. Some processors don't have a retirement stage. Some don't have these micro-operations as an example. But in this... So retirement means? It's when the, in the Intel architecture it means the instruction is done. It's completed. It's produced its results. If the instruction is to store something in memory, it's in memory. It has happened in the processor from the program's perspective. The program instruction has executed. That's what it means in the Intel product. I think the district court treated this as a claim construction issue about whether execute should include retirement or not. I think that's ultimately a factual question about a particular accused product. It may be that in another accused product the instruction completes at a different stage. And that would be a different infringement analysis. But here there's at least a material dispute of fact about whether that execution, completion of instruction occurs in sequence. And Dr. Conti says that's at the retirement stage. Okay. Why don't you save the rest of your time for rebuttal. Let's hear from Mr. Bondor. Thank you, Your Honor. May it please the court, Paul Bondor on behalf of Intel. I want to start with the proposition that contrary to the picture painted by my opponent's briefs that there was no startling miscarriage of justice below. The district court didn't go rogue, didn't issue sue a spunt. They claimed constructions without providing a full and fair opportunity to be heard. I didn't hear anything about that just now. Can you just get to the substance of it? Absolutely. Judge Strano, you're 100% correct that a serial processor is, it means something. The words serial processor mean something. Why doesn't it in context have to mean a processor that does this one at a time thing mostly but not entirely? Understood. I'm going to start with the proposition that the parties and the district court, and the short answer is it goes right to the transition phenomenon. Your Honor is exactly right. The primarily in serial refers to the characteristics of the system when it is undertaking a transition. And in fact, primarily in serial, it's undisputed actually that primarily in  How can the system be primarily serial and primarily parallel? Well, I don't think in this particular instance the system can be primarily in serial or primarily in parallel at the same time. The key is in the transitions. So I'm going to back up for just a moment and talk about the structure of the claim. The claim has serial processor, and then the rest of it is adapted to execute instructions primarily in serial in the software program or words to that effect. We know that the first instance, based on the intrinsic evidence, talks about the nature of the processor, its design and architecture, and that's what the district court was focused on. However, like I said, both the parties and the district court were aware of the remainder of the phrase. So we know that primarily in serial can't refer to the internal operation of the serial processor because of all the statements that XMTT made in the course of the IPR with serial processors being specialists designed specifically to be optimized for serial processing on one hand or parallel processing on the other side, that they cannot be jack-of-all-trades processors that flip back and forth. The difficult thing for me is both parties were all over the place in so many different ways in this case. So it doesn't help me to say it can't be this because they once said something in a different proceeding about this. You have to tether it to the patent specification please for me. Okay, I can. So the word serial has to have meaning both in the first instance serial processor and in the second instance primarily in serial. That second phrase primarily in serial relates to the character of the system when it's transferring modes. Are you suggesting that claim one, which says a serial processor adapted to execute instructions in a software program primarily in serial, that actually what's going to be happening not in serial is actually going to occur not in the serial processor but in a series of parallel processors after there's a transition that shuts off the serial processor and transitions it over to the parallel processor? In part, Your Honor, but I'm going to be more specific than that. The serial processor is always doing its own work in serial. That's its nature. That's how it operates. The patent contemplates it repeatedly, this idea of transitions, and I want to get to figure four for instance just to illustrate kind of what we're talking about. Figure four in the appendix, it's at appendix 40. So the serial processor is always doing its work as the serial processor doing things one at a time, but at times it could be executing software instructions only primarily in serial because of other things going on in the system. During transition periods, during a transition between a serial processing mode to a parallel processing mode, the serial processing on the serial processor kind of ramps down as the parallel processors ramp up, creating points in time when... My problem is that that is true for the system. The system can switch modes between using serial processors and using parallel processors, and that is definitely one of the embodiments disclosed in this patent. Mr. Rowles stood up and said that that is one embodiment, and then there is a different embodiment in this patent, a different embodiment that incorporates the primarily in serial language into the serial processor, and so that's what I understood him to say. Okay. The passage that Mr. Rowles pointed to was indeed a description of the transition of the system in system modes, but the point, to address your point squarely, Your Honor, the serial processor itself is always operating serially, but in these transition points, the serial processor is ramping down. It's sending instructions to the parallel processors which are starting to ramp up. The specification talks about prefetch as an example, and as it is preparing to transition here, figure 4.408, the spawn point. So the serial processor processing serially has sent its prefetch things to the parallel processors. The parallel processors are getting themselves ready. They're starting to execute instructions also. In that moment, the serial processor is processing serially itself, but viewed from a system perspective as XMTT conceded that this language refers to, looking at it from a system perspective, at that same time, the serial processor's processing is happening in parallel with other things going on in the system, and the specification even talks about that point at column 9, lines 45 to 46. It states, in connection with figure 4, the serial processor may still execute serial code while the prefetching is being performed, and so that's what gives life to both instances of serial. It's a serial processor. It's primarily in serial because there are some times when other things are going on in the system, and from the perspective of the system, it could be said to be operating in parallel with these other pieces. How can you have a system that is primarily in serial and also primarily in parallel? Well, I don't, I think that... Because this is my problem. I mean, my problem is you want me to construe the first limitation almost in isolation in a way that makes it hard for me to say this is about the system, because I don't see how you can have a system that's primarily in serial and primarily in  So, to give an example, the system as described here is not in combination, both primarily serial and primarily parallel all at the same time. It flips back and forth, and I'm going to go back to figure 4. So, figure 4 in steps 402, 404, 406, that is a serial mode. The system is in serial mode because all of the processing is going on in serial on the serial processor. When it hits parallel mode, it prepares to do the things as I described normally or just a moment ago, and then it goes into parallel mode. So, it flips from serial mode to parallel mode. The serial mode did not change its nature. The serial mode did not change its operation, but for those moments in time at this spawn and circumstances around it, it is operating simultaneously with the parallel processors, and therefore, from a system perspective, it could be said to be operating in parallel with the parallel processors. It doesn't change its nature. It's just a perspective of it, and then in the parallel mode, the parallel mode is where the parallel processors have taken over. They're doing their thing, and the serial processor is essentially idle. So, it's either not processing or doing a loop or whatever, and then when it gets to point 412, it joins again, and then it goes back, as the patent describes, into serial mode, where the processing is now back to the serial processor, and it's serial processing, because the nature of these processors does not change simply how they're operating in the system. The serial processors are always serial processors, and they're said to be so, and the parallel processors are parallel. Even though the claim language says a serial processor adapted to, I mean, forget about the other patent. I know it doesn't say adapted to, but this one does, this 388. It says adapted to. That suggests to me a serial processor that has been modified to do something. So, I think the answer is that adapted to language describes all of the interconnections and networks that enable the serial processor to be doing its thing serially, and then transfer jobs to the parallel processors so that it can flip back and forth between serial mode and parallel mode, and that is the pivotal disclosure of those. I just don't understand. If your construction is right, and I'm not saying it isn't right now, I'm really confused and tending to think this claim may be indefinite, but if your construction is correct, I don't see how there could ever be infringement. I don't see how you have a system that is operating primarily in series and primarily in parallel. I don't see how you ever have a system that could be infringed. And, Your Honor, I don't think that the system ever is trying to do both of those two things simultaneously, but you did put your finger on something else that is a fair observation to make, and that is that Dr. Vishkin, Uzi Vishkin, envisioned an entirely different type of computer architecture that would work entirely differently from conventional computers. One of the things that XMTT says is, oh, it's a defect of the claim construction that it focuses only on serial processors, which are seldom used, but the fact is that serial processors are still available, and we have evidence of the tensilica in-order processor, by way of example, in the actual record. And then, on top of that, the only time that Professor Vishkin tried to build it, he built it, or tried to build it, out of only serial in-line processors. So there weren't any modern multi-core processors. There weren't any multi-threaded processors. There weren't any multiple-issue parallel processors. So I think, Your Honor, that the issue is that there is a disconnect between trying to read the claim on stuff that manifestly does not use the technology, but the concept of the technology set out in the patent is that you have a world where you have a serial processor quarterbacking these transitions, and you have a farm of parallel processors, and when most of the processing is going on on the serial processor, like in the serial mode between 402 and 408 in Figure 4, that's a serial mode. When most of the processing is shifted over to the parallel processors, that's a parallel mode. That's what's going on between 408 and 412. And then when it comes back, it goes to 412, and it's back in the serial mode because the serial processor is doing serial processing essentially exclusively. And so that's why the system switches back and forth. The system is, at times, primarily operating processing in parallel. What work is being done by the primarily? I think, Your Honor, the only explanation that I could give is that primarily is being used to blur things around the edges so that people who wanted to use the system couldn't point to these transition points and say, aha, at that particular moment, the serial processing is processing simultaneously with the parallel processors. Therefore, it's actually a parallel processor. So I think it's meant to grab these moments of transition where both the serial processor is processing still, because it's ramping down, and the parallel processors are ramping up. And so that's the work that primarily does. And I want to... Does the specification enlighten us at all about primarily, whether it's referring to an amount of time or an amount of some input or something? No, I actually think that the... So to answer the question this way first, every time that the specification uses the term primarily, it does so in the context of the system. It's describing the system. It happens in column one. It happens at the bottom of column two. And then it also happens, I believe, in column nine. And in each case, when the word primarily shows up, it is talking about the system's behavior, not the character of the system, the system's behavior. So that's thing one. What about column three, line one? So I think in column three, line one, that is a continuation of a larger description of the apparatus. It starts at the bottom of column two. And it is discussing all of these things with the interconnection network adapted so that these things can be processed substantially in parallel. It's talking about the memory interactions. And so that... The top of column three is exactly the point that I'm making. The serial processor coupled to the broadcast network and adapted to execute instructions in a software program primarily in serial because it's going to do those handoffs through the memory interconnect to the parallel processor. And the other instance is in column 11, which is also... So we have the system description about a mix. So we have column one, lines 61 to 64. We have the instance that Chico Jamor noted at the bottom of two going over to the top of three. And then the other place that primarily sits is in column 11 at approximately line 46 and following. And so, Judge Toronto, to answer your question, whether primarily... I think that the fair read of the description and the specification is that the primarily business talks about the system mode and whether most of the processing is happening in the parallel processors or whether most of the processing is happening... Well, that's a fair point. I think that the way that it's described is... I think that it's basically, is the processor still active or not? So going back to figure four, you see in the serial mode, there is only one line. There's one line going on. That's the serial line with the serial processor. That's why it's the serial mode. And then the parallel mode happens between 408 and 412 when there's a spawn and a join command. So that 48, 410, 412, that we know is when the parallel mode is active and the serial mode is doing little if anything. That's why it's adapted to do these hands-offs. It's adapted to enable these hands-offs so that you could have a switch from a serial processing mode to a parallel processing mode. I want to add, too, that the same type of hand-off process where the serial processor is doing things to prepare to hand-off but is still working while the parallel processors get going is also in figure five. So I want to do that. But in terms of... Thank you, Mr. Bondor. Mr. Rawls, we'll give you two minutes of rebuttal time because Mr. Bondor went over. Thank you, Your Honor. May it please the court. I want to focus, if I can, on the intrinsic evidence in the specification. There was a suggestion that this patent is directed to some completely different type of processor architecture that was different from what was being done in the art. The title of the patent is a computer memory architecture for hybrid serial parallel systems. The background states that hybrid serial parallel systems are something that existed. People used a CPU for the serial tasks and a GPU for the parallel tasks. That's exactly how Intel describes it in its own patents at Appendix 10.4.10. A CPU is an architecture designed for serial processing. A GPU is an architecture designed for parallel processing. The patent is describing a novel memory architecture to make those systems more efficient. That's the purpose of the invention, the background that Posido would be working from. When the patent talks about serial execution in column 4, starting at line 39, serial processor 14 is configured to process a software program in serial. For example, software instructions in the software program may be executed serially as in a von Neumann or other sequential architecture or the like. I'll set aside primarily for now. If we look at what the intrinsic evidence says about such processors, there's no dispute that by this time all of the CPU processors that are used for this purpose are doing things with a pipeline in a way that is different from the strict one at a time construction with the district court. The 336 patent, which is cited on the face of the 388 patent, it's acknowledged by Intel to be intrinsic evidence. It's Appendix 6.335. The processing architecture employed by today's personal computers is based on the von Neumann architecture, which originally presumed that things were happening one at a time with no concurrent operations, but has evolved to include what it calls pipelining, instruction level parallelism, things that can be going on during the execution of an instruction in a sequence. That patent at column 1, line 57, concludes that with very few exceptions, most present day computers have this pipeline where instructions and data move from one pipeline stage to the next. That would be excluded by the district court's construction as Intel is interpreting it. Intel says serial means the processor does one instruction and waits until it finishes before it even starts the next. It can't do anything in between. That would exclude what the inventor in the intrinsic evidence is saying is serial execution, let alone primarily in serial, but serial execution is in the context of this patent is understood to include these techniques, like instruction level parallelism. The 527 patent at Appendix 6.306, also cited intrinsic evidence, is consistent with this. It says the way commodity computers have been designed is based on this so-called von Neumann architecture, where the instructions are executed sequentially. At column 1, line 48, all major computer vendors have announced processors having this instruction level within an instruction parallelism, and they deviate from the historical sequential abstraction of strictly one at a time. So Mr. Rouse, you're over your time substantially. So this case is taken under submission. We thank both parties.